JOAN BERNARD ARMSTRONG, Chief Judge.
I,The plaintiff-appellant, Edna Wilson, appeals a judgment of November 10, 2010, that granted the Motion for Summary Judgment filed by the defendants-appel-lees, Countrywide Home Loans, Inc. (hereinafter “Countrywide”), Bank of America, N.A. (hereinafter “BoA”), State Street Bank and Trust Company (hereinafter “State Street”) and Beal Bank S.S.B., (hereinafter “Beal Bank”), which defendants are hereinafter referred to collectively as the “Servicing Defendants”. The summary judgment condemned the plaintiff to pay “the amount of the unpaid principal and interest plus any late fees, accrued interest, and all amounts advanced, including amounts advanced for lender-placed insurance and taxes, and reasonable attorney’s fees incurred in enforcing the Note and Mortgage.” We affirm.
We review summary judgments de novo and that includes both fact and law. We must emphasize that we cannot agree with the contention of the Servicing Defendants that we apply the manifest error/clearly wrong standard of review to the trial court’s summary judgment findings of fact. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993), the case relied upon by the Servicing Defendants in support of this contention was not a summary judgment case. The \9de novo standard of review regarding facts is of particular significance as this is a fact intensive case.
Moreover, we note that despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
On May 22, 2001, the plaintiff filed a petition for damages against BoA d/b/a Bank of America Mortgage Company and State Street, claiming damages arising out of the defendants’ failure to properly respond to her “qualified written request” as required by 12 U.S.C. § 2605(e)(1) of the Real Estate Settlement Procedure Act (RESPA). Countrywide and Beal Bank are parties to these proceedings as successors in interest to BoA and State Street.
The plaintiffs petition also alleges that BoA “violated it[s] fiduciary obligation to plaintiff as plaintiffs insurance agent in obtaining a policy that costs so much,” a reference to the Homeowners policy that BoA forced placed at a premium cost of $1404.00 in order to protect the mortgage collateral when the plaintiffs prior policy lapsed. The plaintiffs prior policy allegedly bore the much lower premium rate of $695.00. However, the plaintiff makes no specific argument concerning the violation of fiduciary duty on appeal.
While the plaintiffs appeal is concentrated on RE SPA, she does make the following general argument in her brief:
In its judgment, the trial court awarded to B[o]A “all unpaid principal and interest, plus late fees, accrued interest and all amounts advanced including amounts advanced for lender-placed insurance and taxes and | ^reasonable attorney’s fees incurred in enforcing the note and mortgage.”
No evidence was referred to and the trial court did not give any consideration to Wilson’s no cause of action defenses, prescription defense and the fact that there were material facts in dispute as to RESPA, the debt, the life insurance and the hazard insurance that B[o]A had purchased for Wilson without her consent.
The trial court completely ignored that the law of RESPA should be lib *1216 erally construed in favor of the borrower.
The petition also alleges that the failure of BoA to properly communicate amounts due on the account “amounts to violations of the Louisiana Consumer Protection Acts LSA-RS 51:1401 et se[q].” The plaintiff does not make any reference to the Louisiana Consumer Protection Act in this appeal.
The petition concludes with allegations that BoA violated the U.C.C. by acting in bad faith as making a claim for a return of premiums charged to her for life insurance as she never purchased any such insurance. In her appeal, the plaintiff makes only a passing reference to her U.C.C. claim in the last sentence of her reply brief.
Ms. Wilson admits that on April 5, 1984, she borrowed $52,800.00 from United Federal Savings and Loan Association and executed a note and mortgage on property located at 3624-26 Frenchman Street, New Orleans, Louisiana 70112 in its favor. The Servicing Defendants do not dispute that this loan falls under the provisions of RESPA.
The sequence of events leading up to the commencement of this litigation is basically as set forth in the trial court’s written reasons for judgment.[1] After |4making the loan, Ms. Wilson made regular payments until November 1999. She then missed payments or was late with payments. BoA was the loan servicer at the time. In May of 2000, Ms. Wilson and BoA entered into a Forebearance Agreement that would have allowed her to bring the loan current. However, she failed to make any payments under the agreement.
Before BoA filed any foreclosure pleadings, Ms. Wilson filed this action alleging that the Servicing Defendants violated RESPA by failing to respond to her Qualified Written Request as required by statute. She further alleged that as a result of this failure, she was entitled to actual and statutory damages.
The Servicing Defendants reconvened and sued for the sums they allege to be due under the note and mortgage.
The trial court granted the Servicing Defendants’ Motion for Summary Judgment based on a finding that they complied fully with RESPA and that they were due all amounts they claimed under the note and mortgage, although the judgment of the trial court does not specify what those amounts might be.
In addition to plaintiffs RESPA arguments, the plaintiff contends that the Servicing Defendants are not entitled to any recovery because they failed to send notices by certified mail as required by the note and mortgage.
Paragraph 14 of the mortgage states that the notice has to be sent by certified, return receipt mail. However, we read the “certified mail” requirement as a safe harbor requirement, that is, if the notice is sent by certified mail it is, ipso facto, proof that the lender has sent notice to the borrower. Thus, the purpose of the certification requirement is a means to eliminate disputes as to notice. It is not |Ban end in itself. Where there is no dispute *1217 that notice was sent and received, the question of whether it was sent by certified mail becomes irrelevant. In this case the plaintiff does not deny having received any of the correspondences directed to her by BoA. Therefore, the lack of certified notice provides no defense to the plaintiff.
The provisions of RESPA relevant to this case are found in 12 U.S.C.A. § 2605(e) et seq.:
Notice of receipt of inquiry
(A) In general
If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days ... unless the action requested is taken within such a period.
(B) Qualified written request
For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the ser-vicer, that—
(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
(1) Action with respect to inquiry Not later than 60 days ... after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action | fiwith respect to the inquiry of the borrower, the servicer shall—
(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
(B) After conducting an investigation, provide the borrower with a written explanation or clarification that includes—
(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
⅜ ⅜ ⅝ ⅝ ⅝ ⅜
(f) Damages and costs
(4) Nonliability *1218 A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer’s own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.
|7The record contains a copy of a letter dated February 8, 2000, addressed to the plaintiff as a “Bank of America Mortgage Customer” from Sharon Brading of the Insurance Department:
Our records indicate that the hazard insurance certificate covering your property will RENEW on 4/13/2000. This certificate was originally purchased because we had not received acceptable evidence of insurance from you.
If you have obtained other hazard insurance coverage, forward a copy of your policy or reinstatement notice to the address listed below as soon as possible. If acceptable evidence is not received in this office by 4/13/2000, we will renew the existing force placed certificate for another year. The charge for this coverage will be $1,⅛0⅛.00.
Please note that this is not a homeowners policy. It provides no coverage for theft or damage to personal property, injury to persons or property for which you may be liable or additional living expense. As with most fire policies, coverage for flood and earthquakes is not included.
Should you wish to purchase insurance coverage through your agent, please instruct your agent or company to send the mortgagee’s copy of your policy (with a Mortgagee Clause including your loan number) to our address as shown below.
This matter requires your immediate attention. If you have any questions please contact us at 1.800.444.4302.
The record contains a copy of a “Forbearance Agreement” in which the debtor acknowledges that the mortgage is in default. Payments in the amount of $1,872.44 each are called for on 05/20/00 and 06/20/00 and it is specified that the first such payment “will be applied to the 03-01-00 payment. Subsequent payments are to be received on the dates specified by the contractual due date, until the ar-rearage is cured.” While the copy of this forbearance agreement is undated |8and unsigned, the plaintiff does not dispute the defendants’ version of the facts in this regard.
This is followed in the record by a letter from BoA addressed to the plaintiff dated June 27, 2000 as follows:
You have failed to keep your payment plan made with our office on 05.12.00. We did not receive the payment as promised for 06.20.00. Your payment plan is now null and void. As of today the total amount required to make your loan current is $1,904.12.
As a result, your loan is in serious default and may be subject to additional fees and costs. Please contact our office immediately for the amount required to reinstate your loan.
It is undisputed that in response to this letter, less than ten days later, the plaintiff sent to BoA the sum of $1,904.12, the sum referred to in the BoA letter as “the total amount required to make your loan current....”
*1219 Numbered paragraph “23” of the affidavit of BoA’s Assistant Vice President and custodian of records, Jacqueline M. Tobol-sld states that: “Wilson attempted to make a partial payment on July 7, 2000, but the arrearage had increased and Bank of America was under no obligation to accept a partial payment.” Since the BoA records indicate that the plaintiff attempted to make a partial payment on July 7, 2000, it is probable that the plaintiffs payment was sent in by mail prior to July 7, 2000, i.e., within less than ten days after the plaintiff would have received the letter from BoA.[2]
laAs this payment was received by BoA no later than July 7, 2000, it was received prior to the time a late charge would have been due[3]. While BoA has not identified any “additional fees and costs” that would cause the $1,904.12 sent in by the plaintiff to be a partial payment, the plaintiff has failed to prove that the payment was not short. Therefore, we find that the plaintiff has failed to raise a genuine issue of material fact in this regard.
The June 27, 2000 BoA letter is followed in turn by one dated July 11, 2000, from BoA addressed to the plaintiff, returning the plaintiffs $1,904.12 payment and stating in pertinent part that:
Please find enclosed your check number 3454829469-470 in the amount of $1,904.12. We are returning your mortgage payment because it is not sufficient to pay the total amount due. The total amount due on your loan is $2,808.66.
On September 12, 2000, the plaintiffs attorney sent a “Notice of Inquiry” letter (hereinafter referred to sometimes as the “Letter”) to BoA that the plaintiff contends constituted a Qualified Written Request (hereinafter “QWR”) as defined in 12 U.S.C.A. § 2605(e)(1)(B):
Gentlemen:
The writer represents the above referred to individual. Please find enclosed Hazards [sic] Insurance Binder on her property that you carry the mortgage on. Please sen[d] to me your escrow accounting once you have applied the insurance policy. If you had made my client aware of this fact of not having insurance, this would have been taken much earlier.
From the check and money orders that I have reviewed, my client has paid up to June 2000 when you consider the two money orders returned in July 2000.
| inTherefore, in reviewing these records, I see that we disagree as to the amount, so will you kindly take this as a “Notice of Inquiry” under 12 USCA 2605(e)(1). I hereby request that you do that which is called for by this law.
Thanks for your kind help and assistance to settle this matter before litigation is pursued.
BoA argues in its brief that other than reference to “hazard insurance” the letter *1220 of September 12, 2000 contains no clear request for information concerning the arrearage on the account. Although numbered paragraph “28” of the BoA’s Assistant Vice President and custodian of records, Jacqueline M. Tobolski’s, affidavit states that, “On September 12, 2000, Wilson’s attorney, Mr. Breeden, sent a letter to Bank of America requesting information about lender-placed insurance and questioning the amount owed to bring the Mortgage current,” we agree with the Servicing Defendants that the letter is not clear in that regard. Therefore, we find that the Tobolski affidavit fails to raise a genuine issue of material fact regarding the nature of the inquiry posed by the QWR letter.
As we find that the plaintiffs Letter of September 12, 2000 failed to adequately express a request for information concerning the amount required to bring the account current, we must conclude that BoA was reasonable in not reading it as expressing such a request. Accordingly, the Servicing Defendants cannot be held accountable under RESPA for failing to respond with such information.
Chronologically, the next event is a letter in the record from Bank of America Mortgage dated September 13, 2000, directed to the plaintiff. This letter informs her that:
Because we have not been receiving payments for your optional insurance premium, we have removed it from Inyour monthly mortgage payment. Your new payment coupon will reflect this change and give you a new payment amount that does not include your optional insurance premium.
If you have any questions about the information above, please call Minnesota Life at 1.800.372.2775.
We agree with the trial court that this September 13, 2000 letter from BoA shows that BoA responded immediately, in fact, the very next day after the day the plaintiffs attorney mailed the September 12, 2000 Letter. The plaintiff argues this letter was not intended as a response to the QWR as the reference to “optional insurance” in BoA’s letter is a reference to life insurance and accidental death insurance which was truly optional and not to hazard insurance which was not optional, i.e., hazard insurance was an absolute requirement of the loan. In support of the contention that the BoA letter of September 13, 2000 was never intended to be a response to the QWR, the plaintiff also argues that it is highly unlikely that BoA would have responded to the QWR the same day it was received, September 13, 2000 being the earliest day BoA could have received the QWR mailed the day before. However, viewing the record as a whole, we find no error in the finding of the trial court that the BoA letter of September 13, 2000 was in prompt response to the QWR mailed the day before.
This is followed by a document addressed to the plaintiff from BoA Mortgage labeled “Payoff Statement 09-21-00,” containing the following information:

CALCULATION OF AMOUNT REQUIRED TO SATISFY LOAN AND RELATED FEES:

Payoff figures void after 09-28-00 This loan is due for the 05-01-00 Payment
Current Total Unpaid Principal
Balance $46,303.97
h^Acerued Interest to 09-28-00 $ 3,166.00 “Escrow Overdraft $ 1,628.46
Unpaid Late Charges $ 94.26
Recording Fee $ 12.00
Amount Due to Pay off Loan by
09-28-00 and subsequent
Release 1,211.42
Other unpaid Fee(s) 6.75
*Total Amount Payable* $51,211.42 *1221 This calculation is void after 09-28-00. You may want to obtain an updated payoff statement after this date. Interest $17.59 per Day.
If the current month’s payment has not been paid and the payoff is received after the late charge assessment date, a late charge of $31.28 will be assessed and must be included with the payoff. These figures are subject to final verification upon receipt of funds by Bank of America. Bank of America reserves the right to adjust these figures and refuse any funds which are insufficient to pay the loan in full for any reason, including but not limited to error in calculation of payoff amount, previously dishonored check or money order, or additional disbursements made by Bank of America between the date of this payoff statement and the receipt of the funds.
There follow instructions on how to remit the payment and an accounting showing that nothing is due for New Orleans Parish taxes, but that as of 04-13-01 the sum of $1,404.00 will be due to Balboa Life and Casualty for insurance. This letter is further proof that BoA was not ignoring the plaintiff and made every effort to supply her with account information on what could almost be described as a fast track basis. While the plaintiff argues that this statement does not tell her how to bring the account current and makes no reference to hazard insurance, in the context of all the communications between the parties, there is nothing in this | ^account statement from BoA that raises a genuine issue of material fact in favor of the plaintiffs case.
Therefore, we agree with that portion of the reasons for judgment of the trial court stating:
On September 13, 2000 Bank of America immediately responded to Ms. Wilson’s letter of September 12 with a letter to Ms. Wilson showing removal of payments for lender placed insurance premiums from her mortgage payments as requested by her.... Later, on September 21, 2000 Bank of America sent a written payoff statement to Ms. Wilson. These actions taken by Bank of America, which specifically respond to the September 12, 2000 letter, clearly acknowledge receipt of the QWR.
Thus, BoA effectively acknowledged receipt of the plaintiffs QWR not once, but twice, within the twenty-day period mandated by RESPA.
There is a copy of a letter in the record addressed to the plaintiff from Attorney Graham Arceneaux dated September 28, 2000, placing her in default and informing her that “we are preparing foreclosure proceedings and will file without further notice.” It further informs her that:
Should you desire to reinstate the loan, it will be necessary to obtain the approval of Bank of America, NA and to pay all delinquencies, installments, advances, late charges and attorney’s fees.
This is followed on 10-16-00 by another payoff statement virtually identical to the one dated 09-21-00 above. The only material difference between this payoff statement and the previous one is that now the payoff amount has grown to $52,677.76. This shows that BoA made every effort to keep the plaintiff informed of developments on her account.
This payoff statement may well be the same statement referred to in Mr. Arcen-eaux’s letter of October 17, 2000, but they are not attached to each other in |14the record. This letter from Mr. Arceneaux addressed to the plaintiffs counsel, Patrick Breeden, advises him that the plaintiffs loan is in default, and that “no payments have been made for the months of May, *1222 2000 through October, 2000,” and that foreclosure proceedings would be filed without further notice. The letter calls for a payoff amount effective October 31, 2000 of $51,415.76, which is different from the $52,677.76 figure called for in the October 16, 2000 payoff statement that we assume from the record was enclosed in the letter. The letter then goes on to state that:
Please note that a credit has been deducted for costs advanced to my office but unused as this point. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.
Unless the consumer, within 30 days after receipt of this notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid.
If the consumer notifies this office in writing within the 30 day period that the debt or a portion thereof, is disputed, we will obtain verification of the debt, and a copy of such verification will be mailed and or faxed if you prefer for your review.
Upon the consumer’s written request within the 30 day period, we will provide you with the name and address of the original creditor if different from the current creditor.
.... To reinstate the loan at this time would require payment to this office in the form of certified funds, $5,939.82.
|15Mr. Arceneaux’s letter informs the plaintiff that the sum of $5,939.82 is the proper amount needed to “reinstate” the loan. Thus, BoA, directly and through legal counsel, followed up its initial ac-knowledgement of the QWR within 60 days of the plaintiffs Letter as required by RESPA.
This letter supports the contention of the Servicing Defendants that by this time the plaintiffs loan had been turned over to Mr. Arceneaux for collection and/or foreclosure and that they could no longer be considered loan servicers for RESPA purposes. We acknowledge that numbered paragraph “34” of the Tobolski affidavit states that, “Bank of America ceased servicing Wilson’s Mortgage on October 20, 2001,” over a year after the date of Mr. Arceneaux’s letter, and that numbered paragraph “5” of the affidavit of Lori L. Ruiz, offered by the Servicing Defendants in support of their motion for summary judgment, states that, “Bank of America serviced the Mortgage from November 5, 1999 until October 20, 2001,” but we find that for RESPA purposes Mr. Arceneaux should be viewed as the loan servicer at all times relevant to this litigation.
Moreover, we agree with the written reasons for judgment of the trial court in finding that Beal Bank and Countrywide could not be held liable as servicers because: “Beal Bank and Countrywide serviced the loan after January 2002 — two years after the relevant notices of default.” Consistent with the trial court’s reasoning, we find that in the context of this case the provisions of RESPA concerning successor liability (referred to as “transferor or transferee servicer”) do not apply.
Finally, we find that the Servicing Defendants offered sufficient documentation to support the claim for the amount due from the plaintiff on the 11filoan and there is no genuine issue of material fact in this regard. The plaintiff does not dispute the fact that she has made no payment on the loan in over ten years.
*1223 As we have not found any genuine issues of material fact, we affirm the summary judgment of the trial court.
AFFIRMED

. Based on documents in the record, it appears that United Federal failed and was placed into receivership by the Resolution Trust Corporation (RTC) and was succeeded by the Federal Deposit Insurance Corporation which in turn assigned the note and mortgage to State Street as Trustee under that certain Pooling and Servicing Agreement for RTC Mortgage Pass-Through Certificates, Series 1992-2. On January 28, 2002, State Street, as Trustee on behalf of the Trust Fund for the RTC Mortgage Pass-Through Certificate series 1992-2, transferred the Note and assigned the Mortgage to Beal Bank.

. Ms. Tobolski’s affidavit does not explain how the arrearage increased in so short a period of time. The affidavit does not describe any "fee” or "cost” that would have added to the arrearage, "fees” and "cost” being the only two sources of possible additional arrearages referenced in the BoA letter of June 27, 2000. If there is some additional sum which the Servicing Defendants had pri- or knowledge would become due before the plaintiff could reasonably be expected to respond to the letter of June 27, 2000, it may raise a question of the Servicing Defendants’ good faith in failing to set forth such obviously relevant information in the letter requesting the payment of $1,904.12.

. According to the Mortgage Note and numbered paragraph "27” of the affidavit of BoA’s Assistant Vice President and custodian of records, Jacqueline M. Tobolski, no additional late charge is due until the 16th of the month.